Ronald W. WHEELER, Plaintiff and Appellee,

v.

Geraldine S. WHEELER, Defendant and Appellant.

Civil No. 950307.

Supreme Court of North Dakota.

May 14, 1996.

---

Steven L. Latham, of Wheeler Wolf, Bismarck, for plaintiff and appellee.

Wayne K. Stenehjem, of Kuchera, Stenehjem & Walberg, Grand Forks, for defendant and appellant.

VANDE WALLE, Chief Justice.

Geraldine ["Gerridee"] Wheeler appealed from an order terminating spousal support.

We reverse, concluding that the trial court's finding of a material change in circumstances is clearly erroneous.

Gerridee and R.W. ["Bert"] Wheeler were divorced in 1984 after 35 years of marriage. The original divorce judgment incorporated the parties' stipulated agreement, whereby Bert agreed to pay Gerridee $2,430 per month spousal support until his anticipated retirement from his law practice in 1994. If Bert retired between January 1994 and January 1996, his support obligation was to drop to $1,000 per month, and support was to terminate on January 1, 1996. If Gerridee obtained employment, support was to be reduced by an amount equal to one-third of her gross monthly income, with a maximum reduction of $430 per month.

Gerridee obtained employment which resulted in reduction of support by the $430 maximum. In 1986 Bert moved to modify the judgment to eliminate all support payments, arguing that Gerridee had achieved economic rehabilitation. The trial court reduced the support payments to $700 per month, and Gerridee appealed.

We agreed with the trial court that there had been a material change of circumstances, but remanded for reconsideration of the amount of support, taking into account the retirement needs of Gerridee. *Wheeler v. Wheeler*, 419 N.W.2d 923 (N.D.1988). No hearing was held on remand, because the parties executed a new agreement on spousal support. This new agreement, dated September 1, 1988, provided:

"1. The plaintiff, R.W. Wheeler, commencing on the 5th day of September, 1988, shall pay to Gerridee Wheeler, for her support, maintenance and retirement, the sum of One Thousand Four Hundred and Sixty Dollars ($1,460) per month until and through September 5, 1992. Thereafter, R.W. Wheeler shall pay the sum of Five Hundred Dollars ($500) per month until his death. Should Gerridee Wheeler remarry prior to October, 1992, the support obligation under this paragraph shall reduce to Five Hundred Dollars ($500) per month."

The judgment was amended accordingly.

Bert retired from the full-time practice of law on September 1, 1992. He continued making payments as required by the amended judgment until April 1994, when he made a partial payment. Since that time, he has made only one additional partial payment. On September 14, 1994, the Clerk of District Court mailed a notice of arrearage to Bert, and on October 24, 1994, an order to show cause threatening a contempt finding was served upon Bert.

Bert subsequently moved to modify the judgment to eliminate his support obligation. After the district court initially denied the motion, Bert filed a motion for reconsideration and an affidavit. The court then granted Bert's motion and ordered elimination of Bert's spousal support obligation.

On appeal, Gerridee first asserts that the district court lacked jurisdiction to modify the amended judgment. She argues that, while the original judgment included language specifically reserving continuing jurisdiction over support matters, the second stipulation and amended judgment deleted that language. Gerridee argues that jurisdiction to modify in the first appeal was premised upon this language in the original judgment, see *Wheeler, supra,* and deletion of that language was intended by the parties in their second stipulation to prevent further modification of the support provisions.

Gerridee has misread our opinion in the first appeal. We did not imply that jurisdiction to modify the original judgment was dependent upon an express reservation of continuing jurisdiction in the judgment. As we explained in *Wheeler,* a court's continuing jurisdiction to modify ongoing spousal support is statutory.

■ Section 14–05–24, N.D.C.C., provides:

*"Permanent alimony—Division of property.* When a divorce is granted, the court shall make such equitable distribution of the real and personal property of the parties as may seem just and proper, and may compel either of the parties to provide for the maintenance of the children of the marriage, and to make such suitable allowances to the other party for support during life or for a shorter period as to the court

may seem just, having regard to the circumstances of the parties respectively. The court from time to time may modify its orders in these respects."

We have interpreted that provision to authorize modification of spousal support upon a showing of changed circumstances. *E.g., Ramsdell v. Ramsdell,* 454 N.W.2d 522 (N.D. 1990); *Schaff v. Schaff,* 449 N.W.2d 570 (N.D.1989). This authority exists notwithstanding the decree contains the stipulation of the parties as to permanent alimony, although we have said the court " 'should be more reluctant to order a revision and modification of a decree where such a decree was based on agreement than where such decree is based on the finding of the court as to ability to pay.' " *Eberhart v. Eberhart,* 301 N.W.2d 137, 143 (N.D.1981), quoting *Bryant v. Bryant,* 102 N.W.2d 800, 807 (N.D.1960). We conclude the district court had jurisdiction to modify the support provisions of the judgment.

Gerridee asserts that the district court erred in finding a material change in circumstances warranting modification of spousal support. We agree.

■ We delineated the standards for modifying spousal support in *Wheeler, supra,* 419 N.W.2d at 925 (citations omitted):

"To modify spousal support, circumstances must have changed materially.... Slight, or even moderate, changes in the parties' relative incomes are not necessarily material.... 'Material change' means something which substantially affects the financial abilities or needs of a party.... The reason for changes in income must be examined, ... as well as the extent that the changes were contemplated at the time of the agreed decree."

Because the decree is based upon a stipulated agreement of the parties, rather than upon the court's original findings, and because the parties are in a better position to understand their circumstances than is the trial court, we view the issue of whether the change in circumstances was contemplated with greater scrutiny. *Huffman v. Huffman,* 477 N.W.2d 594, 597 (N.D.1991); *see also Wheeler, supra.*

■ The party seeking modification bears the burden of proving a material change in circumstances which warrants modification. *Schaff, supra; Schmidt v. Schmidt,* 432 N.W.2d 860 (N.D.1988). We recognize that a trial court's determination of whether there has been an uncontemplated material change in circumstances warranting a modification of spousal support is a finding of fact which will only be set aside on appeal if it is clearly erroneous. *Hager v. Hager,* 539 N.W.2d 304 (N.D.1995); *Huffman, supra.*

■ In this case, the trial court's memorandum opinion contains only cryptic, conclusory statements about material changes in circumstances, rather than explicit findings. Findings of fact should be sufficiently stated so we are able to understand the factual basis for the trial court's decision, *Porth v. Glasoe,* 522 N.W.2d 439 (N.D.1994), particularly in view of our standards for modification as set forth in cases such as *Eberhart* and *Wheeler, supra.*

■ Although we would ordinarily remand for clarification of missing or conclusory findings of fact, we will not do so when, through inference or deduction, we can discern the rationale for the result reached by the trial court. *Alvarez v. Carlson,* 524 N.W.2d 584 (N.D.1994). We may rely upon implied findings of fact when the record enables us to understand the factual determinations made by the trial court and the basis for its conclusions of law and judgment. *Reinecke v. Griffeth,* 533 N.W.2d 695 (N.D.1995). In this case, it appears that the court based its finding of changed circumstances on three factors: (1) Bert's income had declined; (2) Bert had health problems; and (3) Gerridee's income had increased.

We consider first Bert's reduction in income and his health problems. Bert voluntarily retired from his law practice on September 1, 1992. In November 1993, Bert first learned that he suffered from atherosclerosis. The record does not support Bert's assertion that his health problems were the cause of his reduction in income. Rather, Bert's own affidavit demonstrates that he voluntarily retired, with the resulting

reduction in income, more than a year before his health problems surfaced.

■ We have held that a support obligor's decision to retire constitutes a voluntary reduction in income which does not warrant a modification of spousal support. *See Huffman, supra.* As explained in *Koch v. Williams,* 456 N.W.2d 299, 301 (N.D.1990) (citations omitted):

"While it is true that the 'change of circumstances' necessary to warrant modification is one based primarily on a change in financial circumstances, ... it is also true that not every change in financial circumstances justifies a modification.... When the change is voluntary or self-induced, no modification is warranted because the obligor, by voluntarily placing herself or himself in a less financially secure position, is without clean hands and precluded from seeking equity. Even though the law never requires impossibilities, NDCC § 31–11–05(22), one who voluntarily dissipates or reduces income is not protected either from the consequences of such conduct or by equitable maxims."

*See also Mahoney v. Mahoney,* 516 N.W.2d 656 (N.D.Ct.App.1994).

■ Furthermore, it was clearly within the contemplation of the parties that Bert would eventually retire from his law practice. The original stipulation and decree included express provisions governing support upon Bert's retirement. The second stipulation provided that Bert would pay $1,460 per month until September 1992, when his monthly support obligation would drop to $500. Not coincidentally, Bert retired on September 1, 1992. Changes in the parties' financial circumstances which were contemplated or foreseen at the time of the initial divorce judgment or subsequent modification do not constitute a material change in circumstances warranting modification. *E.g., Schmidt v. Reamann,* 523 N.W.2d 70 (N.D. 1994); *Rueckert v. Rueckert,* 499 N.W.2d 863 (N.D.1993); *Huffman, supra.*

■ Nor do Bert's health problems provide a sufficient basis for modification. Bert voluntarily retired long before he learned that he had health problems. He has not presented evidence that his income declined further because of his health problems. Furthermore, Bert's health problems could hardly be considered unforeseeable. Bert was 65 years old when the second stipulation was agreed to in 1988. At that time, he agreed to make support payments until his death. It is foreseeable that in the future, persons at Bert's stage in life might experience health problems.

■ The third factor relied upon by the trial court was the increase in Gerridee's income. The trial court found that Gerridee's adjusted gross income for 1993 was $57,841. Of that amount, $6,000 was spousal support. The court made no finding of Gerridee's income at the time of the second stipulation in September 1988. According to our opinion in *Wheeler, supra,* Gerridee earned approximately $46,000, not including spousal support, in the year before Bert's first modification motion in 1986. The record does not support a finding of a significant, unforeseeable increase in Gerridee's income between the prior modification in 1988 and the order terminating support in 1995. A slight or moderate increase in a party's income which was foreseeable at the time of the original decree or prior modification does not constitute a material change in circumstances warranting modification of support. *See Wheeler, supra.*

■ Bert also argues that there is a substantial disparity between his income and Gerridee's. However, any disparity between the parties' incomes has been caused by the reduction in Bert's income attributable to his voluntary retirement from the practice of law, not by an unexpected increase in Gerridee's income. A disparity in the parties' relative incomes caused by one party's voluntary reduction in income is not a material change in circumstances warranting modification of support. *See Huffman, supra; Koch, supra; Mahoney, supra.*

Upon review of the record, we conclude the trial court's finding that there has been an uncontemplated material change in the parties' financial circumstances warranting modification is clearly erroneous. We there-

fore reverse the order terminating Bert's spousal support obligation.

LEVINE, Surrogate Judge, and SANDSTROM, J., concur.

The Honorable MARY MUEHLEN MARING was not a member of the Court when this case was heard and did not participate in this decision.

MESCHKE, Justice, concurring and dissenting.

I agree with the majority opinion that the trial court had jurisdiction to modify spousal support. However, I disagree with the majority's conclusion that the trial court's decision "contains only cryptic, conclusory statements about material changes in circumstances...." Because I believe the findings are both satisfactory and supported by the evidence, I would affirm. Therefore, I respectfully dissent.

The findings seem clear to me:

Now, [Bert] has submitted an additional affidavit and supporting documents. Since [Gerridee] did not submit any opposing affidavits, nor does she dispute the information contained therein, the Court adopts the factual statements in [Bert's] affidavit as its findings of fact. As can be seen from this affidavit, [Bert's] only source of income is his Social Security payment of $1,217 per month. Whereas, [Gerridee's] adjusted gross income for 1993 was $57,-841. Also, [Bert's] health has substantially deteriorated.

Therefore, the Court concludes there has been a material change in circumstances which would justify the granting of this motion and *these changes were not contemplated at the time of the previous modification.*

(emphasis added). The trial court entered an order effective April 1, 1995, to eliminate spousal support.

The material statements in Bert's undisputed affidavit give facts essential for the change:

3. I based my motion upon the fact that Geraldine (Gerridee) is fully rehabilitated, and that her current standard of living exceeds that experienced during our marriage. Further, that she is gainfully employed and fully capable of self-support. I further noted to the court that I am now retired from the full-time practice of law since September 1, 1992, and that my yearly income has decreased substantially....

4.... I am no longer financially able to provide for further support for Gerridee, and Gerridee, although she may not agree, does not "need" the support. She is currently enjoying a lifestyle beyond that we were able to enjoy during our marriage. I am attaching for the court's consideration a copy of Gerridee's 1993 tax return which shows adjusted gross income in the amount of $57,841.00. I am also attaching a copy of my spouse and my 1993 tax return which shows adjusted gross income for the two of us at $50,483.00. The adjusted gross income of my wife and me of $50,483 was mostly income of my wife, who has unemployed children of her own requiring her financial assistance, and her income, I believe, is not subject to this court's jurisdiction in this action.

My income was limited to the $12,000 from the firm, my Social Security benefits, and the $6,350 from the IRA that was cashed in on advice of my accountant. My income is now limited to my Social Security payment of $1,217.00 per month.

When I retired, I entered an oral agreement with the firm to surrender my stock in return for employment by the firm as a consultant for $1,000 per month. Each of my clients was turned over to a firm member as lead counsel, as well as every open file.

In March or April, 1994, the members of the firm initiated dissolution, which was completed in July 1994. One of the first acts in this direction was termination of my employment and pay, primarily because it was obvious that the dissolution was going to be costly and no succeeding group wanted to accept the burden of my retirement agreement. My income of $12,000 reflected on the 1993 tax return has ceased. I am not a member of the Wheeler. Wolf law firm. I am "of counsel". I am not covered by the firm's malpractice insur-

ance and, therefore, I am no longer permitted to sign any pleadings. I do get small amounts on occasion from law business that I refer to a member of the Wheeler Wolf firm. I have offered to pay these sums to Gerridee, but she has sought instead to require me to pay the full $500 per month. I simply cannot afford it. I am dependent upon my wife for food, housing and most of my clothing.

. . .

6. In November 1993, I was diagnosed as suffering from atherosclerosis. I underwent angioplasty and atheroscopy in Minneapolis. In June 1994, my arteries were clogged again, and the procedure was repeated. A regimen of diet, exercise and stress avoidance seems to have improved the outlook for the near future, but a return to the active practice of law is contrary to the advice of my cardiologist.

[Gerridee], on the other hand, is in good health and continues to be employed.

In my opinion, these facts and findings justify termination of spousal support in this case.

There is a very real difference between a "foreseeable" change and a "foreseen" or "contemplated" one. I think it is too much to expect someone to plan ahead for the full effects of any possible health problem or for unusual events, like a law-firm dissolution. The extent of Bert's income decline from unusual events after his expected retirement was not clearly contemplated.

From the combined effects of the unexpected events of ill health and law-firm changes, this obligor's financial capacity substantially declined. The correlated change for the obligee, whose financial capacity has increased dramatically since the divorce, creates a substantial disparity between the earning capacities of these former spouses. Bert's individual income has dwindled to less than one-third of Gerridee's, with little prospect for improvement. Even without the decreed spousal support, their relative living standards are no longer disparate. Modification is justified because Bert's setbacks make it inequitable to continue to require him to contribute to Gerridee's higher standard of living.

Material changes in the financial capacities of former spouses justify modification of permanent spousal support. *Mahoney v. Mahoney*, 538 N.W.2d 189, 191–92 (N.D.1995). Modification of spousal support is a finding of fact that will not be reversed unless clearly erroneous. *Id.* I am not convinced a mistake was made.

Because I would affirm, I respectfully dissent.

NEUMANN, J., concurs.